Filed 7/20/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| CYNTHIA LOPEZ, | B315959 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC669038) |
| v. | |
| KENNETH LOPEZ, | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Reversed.

Daniel Boone, for Plaintiff and Appellant.

Law Offices of Dilip Vithlani and Dilip Vithlani, for Defendant and Respondent.

## INTRODUCTION

In this opinion, we hold the trial court failed to apply the proper legal standards, and thereby abused its discretion, in disqualifying attorney Daniel Boone from representing appellant Cynthia Lopez under the advocate-witness rule. We publish to further clarify the standards applicable to a disqualification motion under the advocate-witness rule, having previously done so in affirming an attorney's disqualification in *Doe v. Yim* (2020) 55 Cal.App.5th 573 (*Yim*).

In 2015, appellant, then proceeding pro se, brought this action against respondent Kenneth Lopez, her brother, alleging he had falsely accused her of committing crimes against him and their elderly parents. In January and February 2016, respondent emailed Boone (appellant's husband since June 2015, her former coworker at his law firm, and later her counsel in this action), warning that if appellant did not settle the action, respondent would file a cross-complaint the next day, which he did. The court subsequently dismissed respondent's cross-complaint. In May 2017, appellant retained Boone to represent her pro bono or at a discounted rate, having been advised by Boone that he would likely need to testify at trial, and having executed informed written consent to Boone's representation notwithstanding his expected dual role as advocate and witness. Appellant then filed a first amended complaint, adding allegations concerning respondent's emails to Boone, and a claim of malicious prosecution based on respondent's

2

filing of his dismissed cross-complaint.  Boone continued representing appellant in this action for over four years.

In August 2021, two months before trial, respondent moved to disqualify Boone as appellant's counsel under California's advocate-witness rule, viz., rule 3.7 of the Rules of Professional Conduct (Rule 3.7).  Appellant opposed the motion, principally relying on Rule 3.7's exception for cases in which the attorney has obtained the client's informed written consent to the attorney's dual role.  Appellant also argued respondent's disqualification motion was untimely and tactically motivated.  Although neither party specified the precise subject matter of Boone's expected testimony, appellant represented his testimony would concern his receipt of respondent's January and February 2016 emails, and the emails' undisputed contents.

In September 2021, the court held a hearing, issuing in advance a tentative ruling disqualifying Boone from all phases of the litigation.  Appellant observed that the tentative ruling failed to apply Rule 3.7 and its informed-consent exception, instead applying rule 3.7 of the ABA Model Rules of Professional Conduct (the ABA Rule), which was not binding and lacked any informed-consent exception. Appellant also argued the tentative ruling was overbroad in disqualifying Boone from all phases of the litigation because, inter alia, Rule 3.7 is limited on its face to trial.  The same day, the court adopted its tentative ruling, finding respondent's motion timely and not tactically motivated, and applying the ABA Rule to disqualify Boone from all phases of

3

the litigation.  The court did not cite Rule 3.7, address the rule's informed-consent exception, or find that Boone's disqualification was necessary "to protect the trier of fact from being misled or the opposing party from being prejudiced."  (Rules Prof. Conduct, rule 3.7(a), com. 3.)  Nor did the court address Rule 3.7's limitation to advocacy "in a trial."  (*Id.*, rule 3.7(a).)

On appeal from the disqualification order, appellant contends the court abused its discretion by (1) failing to apply the proper legal standards in disqualifying Boone under the advocate-witness rule; and (2) erroneously finding that respondent's disqualification motion was timely and not tactically motivated.

Agreeing with appellant's first contention, we need not reach her second.  We conclude the court abused its discretion in disqualifying Boone from all phases of the litigation because it failed to apply the proper legal standards, viz., Rule 3.7's informed-consent exception and limitation to trial.  Accordingly, we reverse the disqualification order.

## PROCEEDINGS BELOW
### A. Early Litigation and Prior Appeal

In November 2015, appellant, proceeding pro se, initiated this action against respondent, her brother, asserting claims of defamation and infliction of emotional distress.  (*Lopez v. Lopez* (June 10, 2019, No. B287383) 2019 Cal.App.Unpub. LEXIS 3976, at *2 (*Lopez I*).)  Appellant

4

alleged that in 2014 and early 2015, respondent falsely accused her of committing bank fraud and identity theft against him and their elderly parents. (*Ibid.*) In January 2016, respondent filed a cross-complaint. (*Ibid.*) In January 2017, appellant retained attorney Justin Romig to represent her in this action. In February 2017, the trial court (Judge Richard Rico) dismissed respondent's cross-complaint. (*Ibid.*)

In May 2017, appellant filed a substitution-of-attorney form replacing her former counsel with Boone, her husband since June 2015 and her former coworker at Boone's law firm. In June 2017, appellant filed a first amended complaint, reasserting her original claims for defamation and emotional distress and adding new claims for malicious prosecution (based on respondent's filing of his dismissed cross-complaint), abuse of process, and "'[i]njunctive [r]elief.'" (*Lopez I*, *supra*, 2019 Cal.App.Unpub. LEXIS 3976, at *2-*3.) The first amended complaint newly alleged that in January 2016, respondent defamed appellant by email to her former coworkers.

In September 2017, respondent filed a special motion to strike the first amended complaint under Code of Civil Procedure section 425.16 (anti-SLAPP motion). (*Lopez I*, *supra*, 2019 Cal.App.Unpub. LEXIS 3976, at *4.) In opposition to the anti-SLAPP motion, appellant submitted, inter alia, a declaration from Boone. (*Id.* at *5.) Boone declared that on January 27, 2016 (the day before respondent filed his cross-complaint), respondent emailed

5

Boone at Boone's law firm (appellant's former workplace), encouraging Boone to advise appellant to settle the matter, and indicating respondent would otherwise report the matter to various government agencies and file a cross-complaint.[1] On February 15, 2016, respondent again emailed Boone, stating in relevant part: "[M]ore evidence came to light about your wife that is very damning. Since you are married you will ultimately be responsible for any judgment's [sic] against your wife." Boone declared that respondent's emails were immediately and permanently accessible not only to Boone but also to all other firm employees.

---

[1] Respondent's January 2016 email to Boone, submitted as an exhibit, read: "I hope [appellant] showed you my settlement offer. If not[,] I have provided it as an attachment. Your wife has gotten herself into trouble once again. My attorney feels she needs some consul [sic] from someone that is rational. I intend to go to the district attorney's office and the FBI tomorrow, as well [sic] report this matter to the credit agencies, FINRA and Comptroller of the Currency. I also have a [sic] friends with various state agencies that deal with this kind of issues regarding banks and elderly people. I hope you weigh the cost and benefits of continuing with [appellant]'s irrational behavior. E-mails containing mine [sic] and my parents['] financial records were in fact disseminated without our written authorization. The 24 h[ou]rs I gave [appellant] expire at approximately 5 p.m. today." The attachment stated that if appellant did not timely accept respondent's settlement offer, respondent would file a cross-complaint. As noted, respondent filed his cross-complaint the next day.

In November 2017, the court denied respondent's anti-SLAPP motion. (*Lopez I*, *supra*, 2019 Cal.App.Unpub. LEXIS 3976, at *6.) Respondent filed an appeal, to which appellant responded, still represented by Boone. (*Id.* at *1.) In July 2019, we reversed the anti-SLAPP order with respect to one claim immaterial to this appeal, but otherwise affirmed the denial of respondent's anti-SLAPP motion, allowing the majority of appellant's claims to proceed. (*Id.* at *1-*2, *20.)

### B. Association and Illness of Co-Counsel

From August 2019 to May 2021, Boone continued to represent appellant in moving to recover fees and costs incurred in opposing respondent's anti-SLAPP motion, litigating discovery motions, and engaging in discovery. In May 2021, three months before trial was set to begin, appellant filed an association-of-attorney form signed by attorney Michael Trauben, designating Trauben's law firm as Boone's co-counsel.

In July 2021, appellant filed an ex parte application for a trial continuance, based principally on Trauben's expected unavailability due to a medical emergency that had hospitalized him and would require surgery in mid-August. In support of the continuance request, Boone declared, inter alia, that Trauben's association as "co-counsel and trial counsel" had been necessary because Boone was "expected to be a witness at trial." At a hearing on the request, respondent did not oppose a short continuance, but

7

questioned why Boone could not "do the trial" alone; respondent did not acknowledge or object to Boone's expressed intent to testify at trial.

The court continued the hearing to August 12, 2021. On that date, the court found appellant had failed to produce sufficient information concerning Trauben's health to establish good cause for a continuance, but nevertheless continued the trial to October 18, 2021, to account for developments in the COVID-19 pandemic. At the conclusion of the August 12 hearing, the court held an informal discovery conference (IDC) in chambers, which was not reported. During the IDC, Boone again stated he intended to testify at trial.

### C. Disqualification Motion

On August 23, 2021, respondent filed a motion to disqualify Boone as appellant's counsel under the advocate-witness rule, viz., Rule 3.7.[2] Respondent acknowledged he

---

[2] "California's current version of the advocate-witness rule provides, 'A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client.' (Rules Prof. Conduct, rule 3.7(a), fn. omitted.) A comment to the rule clarifies that the informed-consent exception is not absolute: 'Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks *(Fn. is continued on the next page.)*

8

did not know the subject matter of Boone's expected testimony, but asserted, "[I]t hardly takes an evidentiary foundation to believe that whatever [Boone] testifies to will involve contested issues." Without attempting to identify any contested issue to which Boone's testimony might be relevant, respondent argued that allowing Boone to continue representing appellant would prejudice respondent and the integrity of the judicial process, because the jury might be confused as to whether Boone's statements at trial were evidence or argument. Respondent's motion papers mentioned that Boone was appellant's husband, but did not seek to disqualify Boone on this ground.

The next day, the court held a hearing on respondent's ex parte application to shorten the time for hearing the disqualification motion. The court repeatedly stated it was "shocked" to have learned Boone was married to his client. Respondent emphasized that his motion was based on the advocate-witness rule. Through an associate from Trauben's firm, appellant represented that Boone's expected testimony would concern only "minor uncontested issues" related to "his receipt of a few emails from defendant, and undisputed contents therein." Respondent did not dispute this representation, but argued that Boone's testimony would be

---

to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced.'" (*Yim*, *supra*, 55 Cal.App.5th at 581-582.)

9

"predisposed" toward appellant in light of their marriage. The court set the motion for hearing on September 16, 2021.

### D. Opposition and Reply

On September 9, 2021, appellant filed a written opposition to respondent's disqualification motion, supported by declarations from appellant and Boone. Appellant declared that in April 2017 (three months after she had retained attorney Romig), having found she could no longer afford Romig's services, she asked Boone to represent her pro bono or at a discounted rate. According to both declarations, Boone advised appellant he would likely need to testify at trial, explained potential problems associated with his expected dual role as advocate and witness, and recommended that she obtain independent advice on the matter. In May 2017, after obtaining independent advice from other attorneys, appellant executed informed written consent to Boone's dual role.[3] Throughout his representation, Boone provided his services pro bono or, in the case of "extensive motion practice and oral argument," at a discounted hourly rate of $150.

---

[3] In an attached document, signed by appellant and Boone and dated May 1, 2017, appellant attested under penalty of perjury that she consented to Boone's representation, after having been fully advised of the potential problems posed by Boone's dual role, and having sought the advice of independent counsel. Appellant's September 2021 declaration "reiterate[d]" her consent.

In her opposition brief, appellant argued that under Rule 3.7's informed-consent exception, Boone's disqualification was precluded as a matter of law, or at least unwarranted in light of the balance of interests at stake. Appellant argued she would be prejudiced by Boone's disqualification notwithstanding the association of Boone's co-counsel, because his co-counsel could not prepare for trial as successfully or cost-effectively without assistance from Boone, whom appellant knew to be capable and who provided his services to her pro bono or at a discounted rate. In contrast, she argued, respondent had failed to show that allowing Boone to continue representing her would cause any prejudice to respondent or to the integrity of the judicial process. Appellant further argued the disqualification motion was untimely and tactically motivated, as respondent had been put on notice during the anti-SLAPP litigation that Boone would likely testify at trial "about [respondent]'s email showing malice," but respondent had raised no objection to Boone's dual role until Boone's co-counsel suffered a medical emergency on the eve of trial. Finally, appellant observed that respondent had failed to identify any prohibition against an attorney representing the attorney's spouse, as no such prohibition existed.[4]

---

[4] We note that the Rules of Professional Conduct affirmatively imply a lawyer is *not* prohibited from representing the lawyer's spouse. (See Rules Prof. Conduct, rule 1.8.10(a) ["A lawyer shall not engage in sexual relations with a current client *(Fn. is continued on the next page.)*

11

In reply, respondent asserted he was "not arguing that Mr. Boone should not represent Plaintiff," but instead was seeking to "disqualify Mr. Boone as counsel because he has chosen to testify on his wife's behalf so that [respondent] can get a fair trial . . . ." Respondent implied appellant's informed written consent was defective because it was executed before the adoption of Rule 3.7, and argued that in any event, her consent did not preclude disqualification to avoid prejudice to respondent and to the integrity of the judicial process.[5]

### E. Hearing and Ruling

On September 16, 2021, the court held a hearing on respondent's disqualification motion, confirming at the

_who is not the lawyer's spouse_ or registered domestic partner, unless a consensual sexual relationship existed between them when the lawyer-client relationship commenced" (italics added)].)

[5] On appeal, respondent argues appellant's informed written consent was defective because it was not given on the record, citing the following comment to Rule 3.7: "'A lawyer's obligation to obtain informed written consent _may_ be satisfied when . . . the client gives informed consent on the record in court before a licensed court reporter or court recorder who prepares a transcript or recording . . . .'" (Rules Prof. Conduct, rule 3.7(a), com. 2, italics added.) However, this comment does not _require_ that informed written consent be given in this manner. In any event, the trial court did not find appellant's informed written consent was defective, and it would have erred had it done so for the reason advanced by respondent without allowing appellant an opportunity to give consent on the record.

outset that counsel had read its tentative ruling disqualifying Boone.  Appellant observed that the tentative ruling failed to apply Rule 3.7, instead applying the ABA Rule, which was not binding and lacked any informed-consent exception.[6]  Appellant also requested clarification of the scope of the tentative ruling, observing that Rule 3.7 was limited on its face to trial, and arguing that respondent's reply brief sought disqualification only at trial (which respondent denied).  Otherwise, appellant generally repeated the arguments in her written opposition.  Respondent submitted on the tentative ruling, but additionally asserted that his motion papers sought Boone's disqualification "for all purposes," including representation "behind the scenes."  The court indicated it would verify whether respondent's motion papers had sought such broad disqualification and, if so, disqualify Boone from all phases of the litigation, including the preparation of trial material such as a witness list or motion in limine.

---

[6]    The ABA Rule provides: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: [¶] (1) the testimony relates to an uncontested issue; [¶] (2) the testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) disqualification of the lawyer would work substantial hardship on the client."  (ABA Model Rules Prof. Conduct, rule 3.7(a).)  As noted by appellant, the ABA Rule is not binding in California.  (See *Frye v. Tenderloin Housing Clinic, Inc.* (2006) 38 Cal.4th 23, 52, fn. 12.)

Later that day, the court issued an order disqualifying Boone as appellant's counsel from all phases of the litigation under the ABA Rule. The court did not cite Rule 3.7 or its informed-consent exception. Although the court noted appellant had relied on her informed written consent, the court did not otherwise discuss her consent.

In disqualifying Boone under the ABA Rule, the court acknowledged "it [wa]s unclear what precise testimony Mr. Boone intend[ed] to provide." Without addressing appellant's representations that Boone's testimony would concern respondent's January and February 2016 emails to Boone, the court further stated, "[I]t appears that Mr. Boone intends to provide substantive testimony concerning the underlying family dispute on behalf of Plaintiff, who is his wife." The court reasoned: "Mr. Boone would not just be expected to present objective testimony for a client who he is also advocating for, but would [also] be expected to present objective testimony for his wife in a highly contested family matter while also advocating for her as her attorney. This dual role clearly impairs his credibility as a witness and diminishes his effectiveness as an advocate. [¶] . . . [¶] Because Plaintiff already associated with co-counsel in May 2021, the Court is persuaded that no prejudice will result to Plaintiff as a result of this disqualification." The court did not find that Boone's dual role posed a risk of misleading the jury or prejudicing respondent. Nor did the court address appellant's argument that Boone's co-counsel could not

14

prepare for trial as successfully or cost-effectively without Boone's assistance.

The court rejected appellant's arguments that: (1) the disqualification motion was untimely and tactically motivated; and (2) respondent's reply brief had limited the scope of the requested disqualification to trial. The court did not address the ABA Rule's language limiting its prohibition to advocacy at trial (or the corresponding language in Rule 3.7).[7]

## DISCUSSION

Appellant contends the trial court abused its discretion in disqualifying Boone from representing her in all phases of the litigation under the advocate-witness rule. As explained below, we agree.

---

[7]    In a prefatory comment, the court stated: "The Court was recently shocked to learn Plaintiff and Plaintiff's counsel -- in this family dispute matter -- were married with the possibility of Plaintiff's counsel reaping personal financial gain in any judgment awarded to his wife." However, the court did not purport to disqualify Boone because of the marriage, or because of any financial interest Boone might have had in the outcome. Nor did it apply a "'shock' test," as appellant contends. It applied only the ABA Rule.

15

## A. *Principles*
### 1. **Attorney Disqualification**

"A trial court's authority to disqualify an attorney derives from its inherent power, codified at Code of Civil Procedure section 128, subdivision (a)(5), to control the conduct of its ministerial officers and of all other persons connected with its proceedings in furtherance of justice. [Citation.] Disqualification may be ordered as a prophylactic measure against a prospective ethical violation likely to have a substantial continuing effect on future proceedings." (*Yim*, *supra*, 55 Cal.App.5th at 581; but see *In re Jasmine S.* (2007) 153 Cal.App.4th 835, 843 ["'an appearance of impropriety by itself does not support a lawyer's disqualification'"].)

""'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.'" [Citation.] Under this standard, the trial court's legal conclusions are reviewed de novo, but its factual findings are reviewed only for the existence of substantial evidence supporting them, and its "'application of the law to the facts is reversible only if arbitrary and capricious.'"" (*Yim*, *supra*, 55 Cal.App.5th at 581.) "However, the trial court's discretion is limited by the applicable legal principles." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144 (*SpeeDee Oil*); accord, *In re Charlisse C.* (2008) 45 Cal.4th 145, 150 ["we conclude the trial court applied the wrong legal standard in ordering [public law office]'s disqualification and therefore abused its discretion"].) "In any event, a disqualification

16

motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee Oil*, *supra*, 20 Cal.4th at 1144.)

## 2. The Advocate-Witness Rule

Rule 3.7 provides: "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client." (Rules Prof. Conduct, rule 3.7(a), fn. omitted.) A comment to the rule clarifies that the informed-consent exception is not absolute: "Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced." (*Id.*, com. 3, asterisk omitted, citing *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470 (*Lyle*).) "In other words, a court retains discretion to disqualify a likely advocate-witness as counsel, notwithstanding client consent, where there is 'a convincing demonstration of detriment to the opponent or injury to the

integrity of the judicial process.'"[8]  (*Yim*, *supra*, 55 Cal.App.5th at 582, quoting *Lyle*, *supra*, at 482.)

Rule 3.7 is limited on its face to trial.  (Rules Prof. Conduct, rule 3.7(a) [absent specified exception, "A lawyer

---

[8]  Appellant argues the informed-consent exception is absolute -- in other words, that "once written informed consent is given, the inquiry ends and the disqualification motion should be denied."  But the caselaw on which appellant relies is outdated. Decades before the adoption of Rule 3.7, our Supreme Court commented, in dicta, that in adopting the informed-consent exception in 1979, "the State Bar ha[d] concluded that a fully informed client's right to chosen counsel outweighs potential conflict or threat to trial integrity posed by counsel's appearance as witness." (*Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 619, fn. 9 (*Maxwell*), italics omitted, disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390.)  More recently, but still before the adoption of Rule 3.7, a federal district court concluded that informed written consent "ends the inquiry," criticizing *Lyle*, *supra*, 122 Cal.App.3d 470 for having "invented carve-outs that are absent from the language of the rule."  (*Real Estate Training International, LLC v. Nick Vertucci Companies, Inc.* (C.D. Cal. 2015) 124 F.Supp.3d 1005, 1006-1007; accord, *Ultimate Fitness Ctr., LLC v. Wilson* (S.D.Cal. Nov. 21, 2016, No. 16-CV-418 JLS (JMA)) 2016 U.S.Dist.LEXIS 161253, *19.) Subsequently, however, the State Bar cited *Lyle* with approval in an official comment to Rule 3.7.  (Rules Prof. Conduct, rule 3.7, com. 3, citing *Lyle*, *supra*, 122 Cal.App.3d 470.)  In so doing, the State Bar confirmed that despite the informed-consent exception's seemingly absolute language, even a fully informed client's right to chosen counsel does not necessarily preclude disqualification, if required "to protect the trier of fact from being misled or the opposing party from being prejudiced."  (Rules Prof. Conduct, rule 3.7, com. 3.)

shall not act as an advocate *in a trial* in which the lawyer is likely to be a witness" (italics added)]; see also ABA Model Rules Prof. Conduct, rule 3.7(a) [absent specified exception, "A lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness" (italics added)].) In *Yim*, however, "to effectuate the rule's purpose of avoiding factfinder confusion," we interpreted the rule's use of the term "trial" to encompass a "pretrial evidentiary hearing at which counsel is likely to testify." (*Yim*, *supra*, 55 Cal.App.5th at 583.) Further, finding no California authority on point, but agreeing with most courts that had considered the issue, we "'recognize[d] that an attorney who intends to testify at trial may not participate in "any pretrial activities which carry the risk of revealing the attorney's dual role to the jury." [Citation.] In particular, a testifying attorney should not take or defend depositions.'" (*Ibid*.) We did not consider whether the advocate-witness rule could be further extended to other pretrial activities. (See *id.* at 586.)[9]

"In exercising its discretion to disqualify counsel under the advocate-witness rule, a court must consider: (1) ""whether counsel's testimony is, in fact, genuinely needed""; (2) 'the possibility [opposing] counsel is using the motion to

_____

[9] We affirmed the attorney's disqualification from all other pretrial activities, but on an independent ground, viz., the potential misuse of confidential information. (See *Yim*, *supra*, 55 Cal.App.5th at 586-589.)

disqualify for purely tactical reasons'; and (3) 'the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case.' [Citation.] '[T]rial judges must indicate on the record they have considered the appropriate factors . . . .'" (*Yim supra*, 55 Cal.App.5th at 583; see also *id.* at 585-586; cf. *SpeeDee Oil*, *supra*, 20 Cal.4th at 1144-1145 [careful review of disqualification orders is mandated by concerns that may include "a client's right to chosen counsel" and "the financial burden on a client to replace disqualified counsel"].)

### *B. Analysis*

We conclude the trial court failed to apply the proper legal standards, and thereby abused its discretion, in disqualifying Boone from representing appellant in all phases of the litigation under the advocate-witness rule. First, the court failed to apply Rule 3.7's informed-consent exception. Indeed, the court failed even to cite Rule 3.7, instead applying the ABA Rule, which is not binding and lacks any informed-consent exception. Although the court noted appellant had relied on her informed written consent, it did not otherwise discuss her consent or its relevance. Nor did the court find that Boone's disqualification was necessary, notwithstanding appellant's informed written consent, in order to "protect the trier of fact from being misled or the opposing party from being prejudiced." (Rules

20

Prof. Conduct, rule 3.7, com. 3.)  The court found only that Boone's dual role would impair *his* credibility as a witness (for appellant) and diminish *his* effectiveness as an advocate (for appellant).  It made no finding of prejudice to respondent, much less of potential confusion.  (See *Smith, Smith & Kring v. Superior Court (Oliver)* (1997) 60 Cal.App.4th 573, 578 ["Where a lawyer representing a party in trial is also a witness during the trial, his or her effectiveness, both as a lawyer and as a witness, may be impaired in the eyes of the fact finder.  Such disadvantage enures to the detriment of the party being represented by the lawyer serving such a dual function"].)

Even had the court found a risk that Boone's dual role would mislead the jury, such a finding would have been speculative on the limited factual record before the court. Although the court stated it "appear[ed]" Boone would provide "substantive testimony concerning the underlying family dispute," the court did not expressly reject appellant's contrary representations that Boone's testimony would concern only his receipt of respondent's January and February 2016 emails, and the emails' undisputed contents. Respondent had neither challenged these representations nor attempted, through discovery or a request for an offer of proof, to discern the substance of Boone's expected testimony.  Without further information, the court could not reasonably have found a "'convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.'"  (*Yim*, *supra*, 55 Cal.App.5th at 582,

quoting *Lyle*, *supra*, at 482.) In disregarding appellant's informed written consent without finding any such detriment, the court failed to acknowledge her consent's significance under Rule 3.7, and thereby abused its discretion. (See *Smith, Smith & Kring v. Superior Court (Oliver), supra*, 60 Cal.App.4th at 579-582 [trial court abused its discretion in disqualifying counsel under advocate-witness rule, where record did not indicate court "recognized the importance" of client's written consent to counsel's dual role, which should have been given "'great weight'"].)

The court further abused its discretion in failing to apply Rule 3.7's limitation to advocacy "in a trial." (Rules Prof. Conduct, rule 3.7(a).) The court disqualified Boone from all phases of the litigation, without acknowledging this limitation (or the corresponding limitation in the ABA Rule), and without finding, as we did in *Yim*, that an extension of the rule to specified pretrial activities would effectuate the rule's purpose of avoiding factfinder confusion. (See *Yim, supra*, 55 Cal.App.5th at 577, 583, 585.) Indeed, as explained above, the court made no finding of a risk of factfinder confusion, which would have been speculative, in any event, on the limited factual record before the court. Nevertheless, the court extended the advocate-witness rule to *all* pretrial activities, including behind-the-scenes activities unlikely to pose any risk of factfinder confusion, such as preparing a witness list or motion in limine. Because Boone's categorical disqualification from all pretrial activities was not supported by Rule 3.7's text, or by

22

reasoned findings concerning the rule's purpose, we conclude it constituted an abuse of discretion.

Respondent's reliance on *Yim* is misplaced.[10] As noted, *Yim* does not support Boone's categorical disqualification from all pretrial activities. Even with respect to Boone's disqualification at trial, *Yim* is distinguishable. There, a mother represented her daughter in suing the mother's ex-husband, alleging he had exploited the marriage to sexually abuse the daughter when she was a minor. (*Yim*,

---

[10] The other advocate-witness cases cited by respondent do not assist him, as none addressed whether a trial court properly rejected a client's reliance on the informed-consent exception. (See *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205-1213 [affirming order disqualifying attorney from representing his son in dispute over custody of his grandson, without discussing whether son had provided informed written consent, in reliance on "[a] plethora of family entanglements, potential misuse of confidential information, a conflict posed by the near-certain prospect that counsel will have to testify, and the preservation of the integrity of the judicial system"]; *People v. Donaldson* (2001) 93 Cal.App.4th 916, 929-932 [reversing criminal judgment, where defense counsel was ineffective in failing to object to prosecutor's dual role as advocate and witness at trial, and prosecutor had not obtained proper consent under then-current informed-consent exception]; *Comden v. Superior Court* (1978) 20 Cal.3d 906, 910-911 & fn. 1 [affirming order disqualifying attorney under pre-1979 version of California's advocate-witness rule, which lacked any informed-consent exception]; cf. *Maxwell*, *supra*, 30 Cal.3d at 619, fn. 9 [noting that State Bar's adoption of informed-consent exception in 1979 was in response to *Comden*, and weakened *Comden*'s precedential value].)

*supra*, 55 Cal.App.5th at 576-577.) Less than two months after the suit was filed, the ex-husband promptly moved to disqualify the mother under the advocate-witness rule. (*Id.* at 577-578.) The trial court applied the rule in disqualifying the mother at trial, expressly accepting evidence that the mother had obtained her daughter's informed written consent, but "explaining why it nevertheless deemed the informed-consent exception inapplicable due to the risk of prejudice to [the ex-husband] and to the integrity of the judicial process." (*Id.* at 585; see also *id.* at 579-580.) In affirming, we concluded the record showed the mother was almost certain to be a key witness concerning her ex-husband's alleged sexual abuse of her daughter and her daughter's resulting damages. (*Id.* at 584.) We further concluded the mother's dual role posed a risk of misleading the jury into mistaking her arguments as evidence based on her extensive personal knowledge of her ex-husband, which could prejudice him. (*Id.* at 584-585.) Finally, we concluded that by explaining why it rejected the daughter's reliance on the informed-consent exception, the court demonstrated it had properly considered the daughter's interest in remaining represented by her counsel of choice, particularly because she had not asserted that this interest was "heightened by any purported burden" in retaining new counsel or in paying for duplication of her mother's efforts, which had not progressed beyond the "early stages" of the litigation. (*Id.* at 585.)

The record before us here is materially different. Rather than explain why it rejected appellant's reliance on Rule 3.7's informed-consent exception, the trial court applied a different, non-binding rule, which lacked any such exception. It did so despite its acknowledged uncertainty regarding the subject matter of Boone's expected testimony, without finding that Boone was likely either to be a key witness or to make any argument the jury could perceive to be based on his personal knowledge of respondent (if any). Finally, the court failed to demonstrate that it had properly considered appellant's heightened interest in remaining represented by Boone, who had gained mastery over the case by litigating it for over four years, and who was providing his services pro bono or at a discounted rate. (See *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 848 [client would have suffered "extreme" prejudice from disqualification of counsel who had "gained mastery" over case by litigating it for two years]; *Lyle, supra,* 122 Cal.App.3d at 482 [client was entitled to trial court's consideration of asserted financial hardship in replacing counsel who was providing services pro bono].) Specifically, the court suggested Boone and his recently retained co-counsel were interchangeable, without addressing appellant's argument that she would be prejudiced by Boone's disqualification because his co-counsel could not prepare for trial as successfully or cost-effectively without his assistance. In so doing, the court failed to apply

25

the proper legal standards in disqualifying Boone at trial, requiring reversal of the disqualification order.

## DISPOSITION

The order disqualifying Boone as appellant's counsel is reversed.  Appellant is awarded her costs on appeal.

## CERTIFIED FOR PUBLICATION

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.